UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **MOSES MACK MILLER** | **CIVIL ACTION NO. 19-0308** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **CAMERON EASTERLING, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Plaintiff Moses Mack Miller, a prisoner at Richland Parish Detention Center proceeding pro se and in forma pauperis, filed the instant proceeding on March 8, 2019, under 42 U.S.C. § 1983. He names the following Defendants: Cameron Easterling, Lieutenant Bordelon, Sheriff Kevin Cobb, Warden Chad Lee, Nurse Daina Bordelon, Captain Randy Sewell, Secretary James LeBlanc, and Franklin Parish Detention Center.[1]

For reasons that follow, the Court should dismiss Plaintiff's claims against Franklin Parish Detention Center, Secretary James LeBlanc, and Captain Randy Sewell. The Court should also dismiss Plaintiff's conditions-of-confinement claim against Warden Lee. The Court should stay Plaintiff's excessive force claims against Cameron Easterling and Lieutenant Bordelon pending the outcome of Plaintiff's ongoing criminal prosecution.

The Court should retain Plaintiff's claims of lack of medical care against Nurse Daina and Warden Lee, as well as Plaintiff's First Amendment claim that he was unable to contact friends, family, and the "outside world."

---

[1] This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

**Background**

Plaintiff alleges that, on October 4, 2018, Officer Easterling assaulted, choked, and repeatedly punched him in the face after he requested an administrative remedy procedure form. [doc. # 1, p. 3]. Plaintiff was, thereafter, handcuffed and escorted to the "nurses station," but before he arrived, Lieutenant Bordelon grabbed him, slammed him against the wall, elbowed him in the neck and head, slammed his face against a brick wall, knocked him unconscious, and broke his front tooth. *Id.* at 3-4.

Plaintiff writes: "The next thing I noticed [was] that I couldn't breathe . . . . *Id.* at 4. Plaintiff was handcuffed, and Lieutenant Bordelon dragged him "down the hall by the collar of [his] sweatshirt to the nurses station." [doc. #s 1, pp. 4, 9; 7, p. 1]. Plaintiff alleges that although he was "weak and unable to sit up right," Nurse Daina refused to treat him, stating, "I'll see him later." [doc. # 1, pp. 4, 9]. Lieutenant Bordelon then dragged Plaintiff by his collar "back down the hall to the drunk tank . . . ." *Id.* Plaintiff and officers informed Warden Lee of the altercations, but the Warden refused to provide any medical treatment. [doc. #s 1, p. 10; 7, p. 2].

The next day, Warden Lee placed Plaintiff in a holding cell for three weeks, where he was unable to contact anyone and lacked access to the law library, visitors, recreation, forms, motions, and medical treatment. [doc. #s 1, pp. 5, 10; 7, p. 5]. He could only shower "once or twice a week." [doc. # 7, p. 5]. Plaintiff wrote letters and requests to Warden Lee, but Warden Lee never responded. *Id.*

On an unknown date, Plaintiff was transferred to his current place of confinement, and on April 12, 2019, a nurse practitioner evaluated him, found "no major injuries," and prescribed a steroid. *Id.* at 4. On approximately April 24, 2019, the nurse practitioner prescribed an unidentified medication. *Id.* Plaintiff, however, remains in constant pain and desires an x-ray to

evaluate the extent of his injuries.[2] *Id.*

Plaintiff claims that, to cover up the excessive force, Sheriff Kevin Cobb retaliated against him by denying him medical treatment following the uses of force described above, shipping him to a disciplinary camp, and charging him with battery of a correctional officer, defiance, and aggravated disobedience.[3] [doc. #s 1, pp. 4, 10; 7, pp. 2-3]. Plaintiff maintains that the charges "and/or infractions arose from the October 4, 2018 uses of force." [doc. # 7, p. 3]. His battery charge remains pending, but he was convicted of the two disciplinary violations. *Id.* Because of the latter two convictions, he lost six months of good-time credit. *Id.*

Plaintiff claims that, although Captain Randy Sewell reviewed surveillance footage of the uses of force, Sewell "still" maintains that "the incident didn't happen the way" Plaintiff describes it. [doc. # 1, p. 5].

Plaintiff seeks relief from all defendants in their individual and (presumably)[4] official capacities. He seeks declaratory relief, punitive damages, reimbursement for court costs, $350,000.00 from each defendant, and medical treatment for his head, neck, shoulder, and tooth. *Id.* at 6-7, 12. He also asks the Court to discharge Warden Lee from his employment. [doc. # 7, p. 5].

---

[2] Plaintiff neither names the nurse practitioner as a defendant nor seeks relief from the nurse practitioner.

[3] Plaintiff attaches a grievance to his pleading, in which he wrote that he was charged with battery of a correctional officer, defiance, and aggravated disobedience. [doc. # 1-2, p. 3]. He added that a "DB court took six months good time and three months store [sic]." *Id.*

[4] Plaintiff writes, "Each defendant is sued individually and in his and her capacity [sic]." [doc. # 1, p. 8].

**Law and Analysis**

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[5] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis*,* his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

---

[5] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

5

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Franklin Parish Detention Center**

Plaintiff names Franklin Parish Detention Center ("FPDC") as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. Here, FPDC does not qualify as a juridical person. Accordingly, the Court should dismiss Plaintiff's claims against it.

**3. *Heck v. Humphrey* and *Wallace v. Kato***

Plaintiff alleges that Officer Easterling and Lieutenant Bordelon utilized excessive force. Plaintiff, however, was charged with battery of a correctional officer,[6] and he concedes that the pending charge "arose from the October 4, 2018 uses of force." [doc. # 7, p. 3].

If Plaintiff is ultimately convicted of the pending charge, he may not be entitled to seek relief for excessive force until the conviction is reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. See *Heck v. Humphrey*, 512 U.S. 477 (1994) (holding that a successful civil rights action that would necessarily imply

---

[6] See LA. REV. STAT. § 14:34.5 ("Battery of a correctional facility employee).

6

the invalidity of the plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus). While the rule in *Heck* does not extend to pending criminal matters, a successful Section 1983 excessive force claim, under Plaintiff's allegations, could necessarily imply the invalidity of any future conviction for battery of a correctional officer.[7] See *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (finding that the *Heck* rule applies only when there has been a conviction or sentence that has not been invalidated, not to pending criminal charges).

Plaintiff alleges that the officers utilized excessive force, but he also maintains that he did nothing to prompt the uses of force. [doc. # 7, p. 1]. Ruling that Plaintiff did nothing wrong and, consequently, that any force used against him was excessive, would imply that Plaintiff did not batter a correctional facility employee. See *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656 (5th Cir. 2007) (finding that, because the plaintiff claimed he did nothing wrong, his excessive force claim was barred by *Heck*; the claim would necessarily imply the invalidity of his conviction of aggravated assault on an officer).

The excessive force claims could imply the invalidity of a future conviction for yet another reason. Under LA. REV. STAT. § 14:18(7), "The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed . . . [w]hen the offender's conduct is in defense of persons or of property under any of the circumstances described in

---

[7] A successful claim will not necessarily imply the invalidity of a conviction "if the factual basis for the conviction is temporally and conceptually distinct from" the claim. *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).

Articles 19 through 22." Under Article 19, "The use of force or violence upon the person of another is justifiable . . . [w]hen committed for the purpose of preventing a forcible offense against the person . . . , provided that the force or violence used must be reasonable and apparently necessary to prevent such offense." LA. REV. STAT. § 14:19(A)(1)(a). Here, for instance, if Plaintiff proved that the officers used excessive force before he used any force or violence, he would essentially prove that his actions following the excessive force amounted to justifiable self-defense, thus undermining a potential conviction.[8]

Federal courts are authorized to stay civil rights claims that attack the legality of a detainee's arrest, prosecution, and detention until the allegedly improper state prosecution concludes. See *Wallace*, 549 U.S. at 393-94 ("If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim *related to* rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court . . . to stay the civil action until the criminal case . . . is ended.") (emphasis supplied).

Here, the record does not reveal: (1) whether Plaintiff is charged with two counts of battery or (2) if he is charged with one count, which use of force—or both—Plaintiff's charge arises from. That said, it suffices that Plaintiff's excessive force claims are *related to* rulings that will likely be made concerning his pending charge(s). Accordingly, the Court should stay the excessive force claims pending the outcome of the ongoing criminal prosecution.[9]

---

[8] For example, in *Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996), the Fifth Circuit held that a Louisiana conviction for battery of an officer—a crime for which justification is an affirmative defense—prevented the plaintiff from suing for excessive force in connection with the incident. The court reasoned that "if the plaintiff proved his excessive force claim, he would essentially be proving that his battery was justified, which would undermine his conviction." *Arnold v. Town of Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004) (discussing *Hudson*).

[9] Notably, Plaintiff seeks a stay until his charges are "resolved, dismissed and/or overturned." [doc. # 7, p. 3].

**4. Retaliation**

Plaintiff claims that Sheriff Kevin Cobb retaliated against him to cover up the excessive force, denying him medical treatment, shipping him to a disciplinary camp, and charging him with battery of a correctional officer, defiance, and aggravated disobedience. [doc. #s 1, pp. 4, 10; 7, pp. 2-3]. Plaintiff maintains that the charges "and/or infractions arose from the October 4, 2018 uses of force." [doc. # 7, p. 3].

To prevail on a retaliation claim, a plaintiff must prove: (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which in this context means that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir. 1998). Courts must "carefully scrutinize" retaliation claims to "assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).[10]

A plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may be plausibly inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1995). "Mere conclusory allegations of retaliation are insufficient[,] . . . a plaintiff must allege more than his personal belief that he has been the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). With respect to the third prong above, "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Smith v. Hebert*, 533 F. App'x 479, 482 (5th Cir. 2013).

---

[10] "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Id.* (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir.1994)).

Here, the Court should dismiss Plaintiff's claim because, instead of alleging that Sheriff Cobb retaliated because Plaintiff exercised a specific constitutional right, Plaintiff alleges that Cobb retaliated to cover up the excessive uses of force. See *Moore v. Charles*, 742 F. App'x 30, 31 (5th Cir. 2018) ("Moore's claim that the disciplinary action was instituted to cover up an assault by Charles does not state a retaliation claim, given that Moore does not contend that he exercised any right that caused the defendants to punish him. Instead, Moore argues that the defendants tried to conceal something Charles did.") (internal cited source omitted). Moreover, even assuming Plaintiff argues that he exercised a possible constitutional right to be free from excessive uses of force and that Defendants conspired to punish him because he exercised the alleged right, he does not produce direct evidence of retaliation or allege a chronology of events from which retaliation may be plausibly inferred. See *id.* Accordingly, the Court should dismiss this claim.

**5. Access to Court**

The allegations against Sheriff Cobb—that he "covered up" the uses of excessive force by denying Plaintiff medical treatment, transferring him to a disciplinary camp, and charging him with several disciplinary violations—also reflect Plaintiff's concern that the Sheriff was attempting to impede Plaintiff's right to obtain legal redress for the alleged uses of force. Relatedly, Plaintiff also alleges that Warden Lee placed Plaintiff in a holding cell for three weeks, where he was unable to contact anyone[11] and lacked access to the law library, forms, and motions. [doc. #s 1, pp. 5, 10; 7, p. 5].

To the extent Plaintiff claims that these defendants impeded his access to court, he fails to

---

[11] If Plaintiff was unable to contact "anyone," he was unable to contact an attorney or a court.

10

state a plausible claim. To succeed on a claimed denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (holding that to state a claim of denial of access to the courts, plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access). The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353. Rather, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983. *Id.* at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

Here, Plaintiff does not allege that he lost an actionable claim or that a defendant prevented him from presenting a claim to any court. See *Christopher v. Harbury*, 536 U.S. 403 (2002) (holding, where the plaintiff claimed that officials concealed information about her husband's fate, that she failed to state a claim for denial of her right of access to courts).[12] These claims should be dismissed.

**6. Conditions of Confinement**

To reiterate, Plaintiff alleges that Warden Lee placed him in a holding cell for three weeks, where he was unable to contact anyone and lacked access to visitors, recreation, and

---

[12] See, e.g., *Flores v. Ramierez*, 2014 WL 3050146, at *11 (W.D. Tex. July 3, 2014) (reasoning that, if "an effort was made to cover up the use of excessive force, it was unsuccessful" because the plaintiff was able to file his claim); *Casto v. Plaisance*, 2016 WL 2855468, at *12 (E.D. La. May 16, 2016) (denying a claim that defendants conspired to cover up "wrongful conduct," reasoning that the plaintiff "has not alleged that there was a litigation that ended poorly or that he cannot now seek some particular relief in litigation due to the alleged cover-up."); *Andrade v. Chojnacki*, 65 F. Supp. 2d 431, 461 (W.D. Tex. 1999).

medical treatment.[13]  [doc. #s 1, pp. 5, 10; 7, p. 5].  He could only shower "once or twice a week."  [doc. # 7, p. 5].  Plaintiff wrote letters and requests to Warden Lee, but Warden Lee never responded.  *Id.*

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care."  *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)).  To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]"[14] of "the minimal civilized measure of life's necessities."[15]  *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).  To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference.  *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing

---

[13] The Court should retain Plaintiff's claims of lack of medical care against Nurse Daina and Warden Lee.  The undersigned did not analyze this allegation as a condition-of-confinement. See **Error! Main Document Only.***Bruce v. Little*, 568 F. App'x 283, 285 (5th Cir. 2014).

[14] *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017).

[15] The deprivation alleged must be, objectively, sufficiently serious.  *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

12

effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[16] However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

Here, Plaintiff alleges that, while in "the hole," the Warden did not allow him any visitors and would not allow him to contact friends, family, and "the outside world." [doc. #7, p. 2]. At best, this condition implicates a need for social interaction. *Wilkerson v. Stalder*, 639 F. Supp. 2d 654 (M.D. La. 2007) (finding that social interaction is a basic human need). However, Plaintiff does not allege that he lacked interaction with others within the facility, and the interaction of which he was allegedly deprived continued only three weeks. This deprivation was not, objectively, sufficiently serious.[17]

Plaintiff next alleges, without elaborating, that he lacked recreation. While recreation and exercise are certainly identifiable life needs,[18] Plaintiff's allegation is entirely conclusory. Plaintiff does not, for example, allege that he could not exercise in his cell, and the deprivation

---

[16] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

[17] The Court should, however, retain Plaintiff's claim that he was unable to contact friends, family, and the "outside world" as a First Amendment, right-to-communicate claim.

[18] See *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982), amended in part, vacated in part, 688 F.2d 266 (5th Cir. 1982) (citing, favorably, other courts' opinions that "inmates need regular exercise to maintain reasonably good physical and psychological health.").

13

that he does describe continued only three weeks.[19] See *Ruiz*, 679 F.2d at 1152 ("Of particular importance in determining an inmate's need for regular exercise are the size of his cell, the amount of time the inmate spends locked in his cell each day, and the overall duration of his confinement.") (internal footnotes omitted). Plaintiff does not describe an extreme deprivation.

Finally, Plaintiff alleges that, during the three-week period, the Warden only permitted him to shower once or twice each week. This claim implicates a need to maintain adequate hygiene. However, the frequency and duration alleged does not reflect an extreme deprivation.[20] Moreover, Plaintiff does not allege that his inability to shower regularly resulted in a substantial risk of serious harm. See *Brumley v. Livingston*, 459 F. App'x 470, 472 (5th Cir. 2012) (affirming dismissal of a plaintiff's claim that he was denied showers "because he failed to properly allege that he was subjected to a substantial risk of harm.").

---

[19] See *Lewis v. Smith*, 277 F.3d 1373 (5th Cir. 2001) (finding a similar claim "meritless because it [was] premised on the erroneous assumption that [the plaintiff] had an absolute right to exercise or recreation."); **Error! Main Document Only.***Carter v. Hubert*, 452 F. App'x 477, 478-79 (5th Cir. 2011) ("In regard to his unconstitutional conditions of confinement claims that his placement in a restrictive cell program for seven days at a time, for a total of 26 days, resulted in a lack of exercise, deprivation of meals, and flu-like symptoms due to a severely cold cell, Carter has not demonstrated that prison officials violated his Eighth Amendment rights."); *Jones v. Diamond*, 594 F.2d 997, 1013 (5th Cir. 1979), on reh'g, 636 F.2d 1364 (5th Cir. 1981) ("Our cases have never held that convicted prisoners have a constitutional right to outdoor exercise."); **Error! Main Document Only.***Hernandez v. Velasquez*, 522 F.3d 556, 560–61 (5th Cir. 2008) (finding, where the plaintiff alleged a denial of outdoor and out-of-cell exercise for thirteen months, that even if **Error! Main Document Only.**there was a "fact issue as to whether [the plaintiff] suffered from muscle atrophy, stiffness, loss of range of motion, and depression, there [was] nonetheless no indication these conditions posed a substantial risk of serious harm.").

[20] See *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996) (finding the denial of showers for a three-day period de minimis); *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982) (citing with tacit approval several courts' opinions that "one or two showers a week is sufficient to satisfy constitutional requirements."); c.f. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (finding that a plaintiff stated a claim when he alleged that he was unable to bathe for several months, that he was forced to clean himself with toilet water, and that the unhygienic conditions resulted in a fungal infection requiring medical attention).

For these reasons, the Court should dismiss Plaintiff's conditions-of-confinement claim.

**7. Medical Care**

Plaintiff alleges that, out of retaliation, Sheriff Kevin Cobb denied medical treatment. [doc. #s 1, p. 10; 7, p. 2]. To prevail, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Here, Plaintiff does not allege that Sheriff Cobb knew that he faced a substantial risk of serious harm. Rather, Plaintiff alleges tersely, "Further denying medical" and "Denied Medical." [doc. #s 1, p. 10; 7, p. 2]. Plaintiff does not allege that Sheriff Cobb acted with deliberate indifference to his health. The Court should dismiss this medical care claim against Sheriff Cobb.[21]

**8. Defendant Sewell**

Plaintiff claims that Captain Randy Sewell reviewed surveillance footage of the uses of force, but Sewell "still" maintains that "the incident didn't happen the way" Plaintiff describes it.

---

[21] The Court should retain Plaintiff's medical care claims against Nurse Daina and Warden Lee.

15

[doc. # 1, p. 5]. This allegation does not amount to a constitutional violation. See *Barber v. Quarterman*, 437 F. App'x 302, 304 (5th Cir. 2011) (concluding, where the plaintiff alleged that "officials falsified a report in violation of his right to due process and that others conspired with them to falsify the report[,]" that the allegations did "not state a claim under § 1983 because [the plaintiff] identified no constitutional violation."); see *LeBlanc v. Louisiana State Penitentiary*, 2015 WL 5011984, at *4 (M.D. La. July 28, 2015), report and recommendation adopted, 2015 WL 5025242 (M.D. La. Aug. 24, 2015); *Ryals v. El Paso Cty.*, 2015 WL 3540951, at *10 (W.D. Tex. June 3, 2015). Accordingly, the Court should dismiss this claim.[22]

### 9. Defendant LeBlanc

Plaintiff names James LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections, as a defendant. "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994).

Here, Plaintiff alleges that LeBlanc "is legally responsible for the overall operations of the Department and each institution under its jurisdiction . . . ." [doc. # 1, p. 8]. LeBlanc, however, cannot be vicariously liable for the actions of his subordinates. As Plaintiff does not otherwise allege that LeBlanc participated in a constitutional deprivation[23] or implemented a

---

[22] This is the only claim against Defendant Sewell.

[23] Plaintiff (purportedly) directed a grievance to LeBlanc on December 28, 2018, informing LeBlanc that he "was held for three weeks without any medical treatment." [doc. # 1-2]. In *Murrell v. Chandler*, 277 F. App'x 341, 343 (5th Cir. 2008), the Fifth Circuit reasoned that, because the plaintiff advised defendants in written grievances that a "no smoking policy was not being enforced . . . and that he was having serious health problems as a result[,]" the plaintiff

16

policy so deficient that it constitutes a deprivation of constitutional rights, Plaintiff's claim against LeBlanc should be dismissed.[24]

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Moses Mack Miller's conditions-of-confinement claim against Warden Lee, as well as Plaintiff's claims against Franklin Parish Detention Center, Secretary James LeBlanc, and Captain Randy Sewell be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief may be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's excessive force claims against Cameron Easterling and Lieutenant Bordelon be **STAYED** under the following conditions:

> a. If Plaintiff intends to proceed with his claims, he must, within **thirty (30) days** of the date the criminal proceedings against him have concluded, file a motion to lift the stay;
>
> b. If the Court lifts the stay and finds that Plaintiff's claims would impugn the validity of his conviction, the claims will be dismissed under *Heck*; if no such finding is made, the claims will proceed absent some other bar;
>
> c. Defendants Easterling and Bordelon shall not be required to answer during the stay; Plaintiff may not seek a default judgment against Easterling and Bordelon during the stay; and Plaintiff may not conduct any discovery with respect to his excessive forms claims against Easterling and Bordelon during the stay, except to the extent the discovery is relevant to either his claims of lack of medical care against Nurse Daina and Warden Lee or his First Amendment claim against Warden Lee.

---

created a genuine dispute "as to whether the defendants were involved." Conversely, in *Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008), the Fifth Circuit reasoned that even though the plaintiff "may have put Warden Irby on notice that his needs for medication and a wheelchair were not being met, [] he did not show that the warden was personally involved in his medical care . . . ." Here, regardless, LeBlanc did not affirmatively participate in the alleged deprivation of care. Plaintiff alleges that Nurse Daina and Warden Lee deprived him of care for three weeks, beginning October 4, 2018. Plaintiff requested aid from LeBlanc on December 28, 2018.

[24] This is the only claim against Defendant LeBlanc.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 10th day of June, 2019.

Karen L. Hayes
United States Magistrate Judge